ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| DEPARTAMENTO DE LA FAMILIA **Parte peticionaria** v. SERVIDORES PUBLICOS UNIDOS Y OTROS **Parte recurrida** | TA2025CE00127 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de **San Juan** Civil núm.: **SJ2024CV1010** (Salón 903) Sobre: **Impugnación o Confiscación de Laudo** |
|---|---|---|

Panel integrado por su presidenta la Juez Domínguez Irizarry, el Juez Ronda del Toro y el Juez Pérez Ocasio

Pérez Ocasio, Juez Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 29 de agosto de 2025.

Comparece ante nos el Departamento de la Familia, en adelante, Departamento o peticionaria, representada por la Oficina del Procurador General de Puerto Rico, en adelante, Procurador, solicitando que revisemos la *"Sentencia"* en revisión de laudo de arbitraje del Tribunal de Primera Instancia, Sala Superior de San Juan, en adelante, TPI-SJ, notificada el 10 de julio de 2025. Mediante el referido dictamen, el Foro Primario confirmó un laudo de arbitraje emitido por la Comisión Apelativa del Servicio Público, en adelante, CASP.

Por los fundamentos que expondremos a continuación, *denegamos* el recurso solicitado.

### I.

El 4 de febrero de 2014, el Departamento concedió un diferencial por condiciones extraordinarias a catorce (14) de sus empleados, quienes fungían como Manejadores de Casos. Sin embargo, el 11 de agosto de 2015, la Oficina de Gerencias y Permisos, en adelante, OGP, denegó la autorización de dicho pago.

Eventualmente, la OGP autorizó el pago del diferencial de forma prospectiva desde el 8 de septiembre de 2016.[1]

Inconforme, entre el 11 de octubre y 2 de noviembre de 2016, los catorce (14) empleados del Departamento presentaron querellas ante la CASP, para que el diferencial sea pagado con efectividad previa.[2] El 22 de mayo de 2024, se celebró una vista de arbitraje, y dos (2) días más tarde, las partes suscribieron una *"Estipulación Conjunta de Hechos",* debidamente certificada por el Estado.[3] Este documento incluía una sumisión por parte del Departamento, en la que estipuló que de determinarse que este "no está impedido de pagar a los Querellantes el diferencial de forma retroactiva a la fecha de sus designaciones como Manejadores de Casos" se allanarían a una orden para realizar el pago correspondiente.[4]

El 1 de julio de 2024, los querellantes presentaron el *"Alegato de la Unión"* ante la CASP.[5] Por su parte, el 3 de julio de 2024, el Departamento radicó su *"Memorando de Derecho"* ante dicha agencia.[6] Finalmente, el 30 de octubre de 2024, la CASP notificó el *"Laudo de Arbitraje"*, referente a la consolidación de las querellas.[7] Mediante su dictamen, la agencia concluyó que el Departamento *no está impedido de pagarle a los querellantes el diferencial al momento de sus designaciones.*

Inconforme, el 26 de noviembre de 2024, el Departamento presentó una *"Petición de Revisión Judicial de Laudo de Arbitraje"* contra la Organización Servidores Públicos Unidos, en adelante, SPU, quienes representan a los empleados querellantes, ante el TPI-SJ. Arguyó, entre otras cosas, que la CASP erró en su

---

[1] SUMAC, Entrada Núm. 1, Anejo 1.
[2] SUMAC, Entrada Núm. 1, Anejo 1.
[3] SUMAC, Entrada Núm. 1, Anejo 2.
[4] SUMAC, Entrada Núm. 1, Anejo 2.
[5] SUMAC, Entrada Núm. 1, Anejo 5.
[6] SUMAC, Entrada Núm. 1, Anejo 4.
[7] SUMAC, Entrada Núm. 1, Anejo 1.

apreciación de la Ley 66-2014, y en su evaluación de los contratos y acuerdos entre las partes.[8] El 22 de enero de 2025, los recurridos se opusieron a la revisión del laudo.[9] El 10 de junio de 2025, el TPI-SJ notificó una *"Sentencia"*, en la que declaró *"No Ha Lugar"* la solicitud del Departamento.

Por estar en desacuerdo, la peticionaria recurrió ante esta Curia mediante el recurso de autos, haciendo los siguientes señalamientos de error:

> **Erró el Tribunal de Primera Instancia al confirmar el Laudo de Arbitraje L-24-061, el cual es contrario a derecho al no aplicar la prohibición de los pagos de diferencial en salario por condiciones extraordinarias o por interinatos que dispone la Ley Núm. 66-2014.**
>
> **Erró el Tribunal de Primera Instancia al determinar que el DF no está impedida de pagar a los querellantes un diferencial por labor interina, retroactivo a la fecha de su designación, contrario a lo determinado por la OGP.**

Por su parte, el 21 de julio de 2025, SPU presentó ante nos su *"Oposición a la Expedición del Recurso de Revisión Judicial de Petición de Certiorari"*. Perfeccionado el recurso de autos, procedemos a resolver.

## II.

### A. Certiorari

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar discrecionalmente una decisión de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.,* 212 DPR 194, 207 (2023); *Torres González v. Zaragoza Meléndez,* 211 DPR 821, 846-847 (2023); *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021); *800 Ponce de León v. AIG*, 205 DPR 163, 174-175 (2020).

La norma estatuida con relación a los laudos de arbitraje y sus procesos de revisión se ha desarrollado lentamente, por lo que

---

[8] SUMAC, Entrada Núm. 1.
[9] SUMAC, Entrada Núm. 3.

nuestro Tribunal Supremo ha ido estableciendo los contornos procesales de estos. *Hosp. del Maestro v. U.N.T.S.,* 151 DPR 934, 939 (2000). Nuestro Máximo Foro dispuso que los dictámenes del Tribunal de Primera Instancia que versen sobre laudo de arbitraje podrán impugnarse ante nos mediante el recurso discrecional de *certiorari. Id.* A esos fines, el texto de la Regla 32(D) del Reglamento del Tribunal de Apelaciones, *In re Aprob. Enmdas. Reglamento TA,* 2025 TSPR 42, pág. 47, 215 DPR ___ (2025), recoge este asunto textualmente. De igual forma, el Artículo 1.14 (d) de la Ley de Arbitraje de Puerto Rico, en adelante, Ley de Arbitraje, Ley Núm. 147 de 9 de agosto de 2024, dispone que se podrá acudir en revisión mediante *certiorari* al Tribunal de Apelaciones contra una orden del Tribunal de Primera Instancia que confirme un laudo.

Ahora bien, tal discreción no opera en lo abstracto. La Regla 40 del Reglamento del Tribunal de Apelaciones, supra, expone los criterios que esta Curia deberá considerar para ejercer sabia y prudentemente su decisión de atender o no las controversias ante sí. *IG Builders et al. v. BBVA PR,* 185 DPR 307, 338-339 (2012); *Torres Martínez v. Torres Ghigliotty,* 175 DPR 83, 96-97 (2008). Véase, además, *Rivera et al. v. Arcos Dorados et al.,* supra; *Pueblo v. Rivera Montalvo,* 205 DPR 352, 372 (2020). La precitada Regla dispone lo siguiente:

> El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa de los procedimientos en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Reglamento del Tribunal de Apelaciones, supra, pág. 59.
*BPPR v. SLG Gómez-López*, 213 DPR 314, 337 (2023).

Sin embargo, ninguno de los mencionados criterios es determinante por sí solo para este ejercicio y no constituye una lista exhaustiva. *García v. Padró*, 165 DPR 324, 335 (2005). Por lo que, de los factores esbozados "se deduce que el foro apelativo intermedio evaluará tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada; esto, para determinar si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido o una dilación injustificada del litigio". *Torres Martínez v. Torres Ghigliotty*, supra, pág. 97. (Énfasis omitido).

### B. Laudo de Arbitraje

El surgimiento del *arbitraje* se da como un intento por alcanzar una solución de las controversias jurídicas de forma más pacífica y amigable que el proceso oficial con intervención del Estado. Sustituir el proceso público por uno *privado* con el fin de evitar el derecho oficial y conducirlo a la aplicación de un derecho considerado más beneficioso para las partes. Aun cuando esta práctica existe desde mucho antes que el derecho Romano, se le atribuye a este último el desarrollo y fortalecimiento de la figura.[10] En el Derecho Romano, este tenía el aspecto de *contrato de*

---

[10] Pedro F. Silva Ruiz, *"El Arbitraje en Puerto Rico"*, Revista de Derecho Procesal, 2008-2, Rubinzal-Culzone, eds., Buenos Aires, Argentina, pp. 417-433.

*compromiso*, cuyo objeto era la controversia a resolver por los árbitros.[11] En el Derecho Canónico, por otro lado, surgió como transacción en la que el árbitro mediaba como conciliador, sin capacidad adjudicativa.[12] Esto fue así hasta la llegada del Código de las Siete Partidas en el año 1265, en donde se volvió a la concepción romana.[13]

En *Puerto Rico*, bajo la corona española, la *figura del arbitraje* se establecía como parte de los Códigos y Leyes de Enjuiciamientos Civiles. Bajo ese estado de derecho, la figura de arbitraje fue tratada y dividida como dos figuras sin unificación. Por un lado, como un contrato de transacción y, por otro, como un contrato de compromiso.[14] Así, teniendo su precedente del marco jurídico español, a mediados del Siglo XX se creó la hoy derogada Ley de Arbitraje Comercial en Puerto Rico, Ley Núm. 376 del 8 de mayo de 1951, 32 LPRA ant. secs. 3201-3228.[15] Esta logró conciliar la figura del arbitraje, unificando el concepto de compromiso y transacción, haciéndolo un convenio escrito entre las partes, válido, exigible, e irrevocable salvo por los fundamentos que existieran en derecho para la revocación de cualquier convenio. Ley de Arbitraje Comercial en Puerto Rico, supra, 32 LPRA ant. sec. 3201.

Actualmente, en Puerto Rico el arbitraje es un proceso adjudicativo en el que un interventor neutral, denominado "árbitro", recibe la prueba presentada por las partes en conflicto y, a base de esta prueba, emite una decisión llamada *Laudo*.[16] Bajo nuestro ordenamiento jurídico, el arbitraje es una figura

---

[11] Tomás Ogayar Ayllón, *El Contrato de Compromiso y la Institución Arbitral*, Ed. Rev. Derecho Privado, Madrid, 1977, págs. 38-39.

[12] Ogayar Ayllón, op cit.

[13] Silva-Ruiz, op. cit.

[14] Véase Arts. 1709-1720 del Código Civil de Puerto Rico de 1930, 31 LPRA ant. secs. 4821-4842. (Código Civil derogado).

[15] Esta es la ley vigente a los hechos, la cual fue derogada por la Ley 147 del 9 de agosto de 2024, conocida como Ley de Arbitraje en Puerto Rico.

[16] Secretariado de la Conferencia Judicial del Tribunal Supremo de Puerto Rico. 1997. *Métodos Alternos para la Solución de Conflictos: Informes y Reglamentación.* Puerto Rico: Tribunal Supremo.

inherentemente contractual. *Aponte Valentín et al. v. Pfizer Pharm.*, 208 DPR 263, 282 (2021). Con relación a los laudos de arbitraje en las relaciones obrero-patronal, existe una sólida política pública a favor estos. *UGT v. Centro Médico del Turabo*, 208 DPR 944, 955 (2022). El arbitraje juega un papel fundamental para resolver pacíficamente las disputas obrero-patronales que surjan de la aplicación e interpretación de un convenio. *Id.* Es por ello, que el árbitro desempeña la función de adjudicador en un litigio judicial. *C.O.P.R. v. S.P.U*, 181 DPR 299, 320 (2011). En consecuencia, el mecanismo del arbitraje es el método idóneo para la resolución de las controversias que emanen de la relación laboral. *UGT v. Centro Médico del Turabo,* supra, pág. 955.

En un sentido más amplio, es la institución mediante la cual dos (2) o más partes nombran a una o varias personas como "jueces" por medio de una declaración de sus voluntades, para que decida o decidan sobre las controversias que entre ellos existe y, de esta manera, obligándose a cumplir lo que estos decidan "como si se tratara de una decisión judicial".[17] Los elementos esenciales son la expresión de voluntad de las partes, el carácter vinculante de la determinación, la potestad del árbitro para dirimir el contrato mediante su decisión y, por último, el carácter *sui generis* de esta.[18]

Por otro lado, a pesar de la gran deferencia que le confieren los tribunales a las interpretaciones que haga un árbitro en un laudo de arbitraje, existen instancias en que amerita la intervención judicial. *UGT v. HIMA*, 212 DPR 492, 500 (2023*); UGT v. Centro Médico del Turabo,* supra, pág. 955. El tribunal podrá revisar, anular o modificar los laudos de arbitraje únicamente en los casos donde se demuestre que hubo: (a) fraude; (b) conducta

---

[17] Marchand Álvarez, Antonio. El Arbitraje: Estudio Histórico y Jurídico. Sevilla, Publicaciones Univ., Sevilla, 1981, p. 19.
[18] *Id.*

impropia del árbitro; (c) falta del debido proceso de ley; (d) ausencia de jurisdicción; (d) que el laudo no resuelva todas las cuestiones en controversia que se sometieron; y, por último (e) una determinación contraria a la política pública. *UGT v. HIMA,* supra, pág. 500; *UGT v. Centro Médico del Turabo,* supra, págs. 955-956; *Indulac v. Unión,* 207 DPR 279, 295 (2021). Sin embargo, según establecido anteriormente, cuando se trata del hecho de que el laudo sea resuelto conforme a derecho, la revisión del foro judicial se limita únicamente a la corrección de errores jurídicos y a la validez jurídica del laudo de arbitraje. *Id.* Es decir, el tribunal se limitará a determinar si el derecho aplicado es el vigente en esta jurisdicción para así confirmar el laudo, revisarlo o modificarlo parcialmente.

### III.

El peticionario recurre ante nos impugnando la revisión del laudo de arbitraje, realizado por el TPI-SJ, sobre las partes del caso. Aduce que el Foro Primario erró en su apreciación de la Ley 66-2014. El Departamento planteó que, a la luz de lo dispuesto en el precitado estatuto, se encuentra impedido de realizar los pagos diferenciales por condiciones extraordinarias a los empleados representados por SPU, retroactivo al momento de sus respectivas designaciones.

Como expresamos anteriormente, los laudos de arbitraje en relaciones obrero-patronales son acreedoras de gran deferencia por el foro judicial, siempre que el mismo sea conforme a derecho. La jurisprudencia ha reconocido varias instancias en las que un tribunal puede intervenir con un arbitraje – ninguna que hayamos podido observar en el caso de marras.

Luego de un examen sosegado del expediente ante nos, y conforme a la norma que nos obliga a determinar nuestra facultad de evaluar un recurso como este, nos vemos impedidos de expedir

el mismo. Además, lo cierto es que no hemos identificado perjuicio, parcialidad o abuso de discreción en la determinación del TPI-SJ.

Según los criterios evaluativos de la Regla 40 de nuestro Reglamento, supra, estamos impedidos de entrar en los méritos de la polémica ante nos, si no se demuestra fracaso irremediable de la justicia. Este Tribunal ha evaluado detenidamente el expediente y el tracto procesal del caso de epígrafe, y no encontramos razón en derecho que justifique nuestra intervención.

**IV.**

Por los fundamentos antes expuestos, *denegamos* expedir el recurso de autos.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones